**ROPER v. R. P. FARNSWORTH & CO. ET AL.**

---

(July 18, 1928. Opinion and Decree.)
(July 2, 1928. Rehearing Refused.)
(October 3, 1928. Writ of Certiorari and Review denied by Supreme Court.)

---

D. V. Doussan, of New Orleans, attorney for plaintiff, appellee.

Gordon Boswell, of New Orleans, attorney for defendant, appellant.

JONES, J. For an injury to his right wrist, caused by accidentally falling from a low scaffold on July 24, 1925, while employed as a carpenter at wages of seven and 20-100 dollars per day, plaintiff sued defendant for 400 weeks workmen's compensation, at twenty-five and 74-100 dollars per week, less compensation already paid.

Defendants denied that plaintiff's disability extended beyond fifteen weeks following the accident, for which period defendants had paid him compensation.

On the issue thus joined, the trial Judge awarded plaintiff compensation of nine and 20-100 dollars per week for a period not exceeding 285 weeks.

At the time of the accident plaintiff was earning thirty-nine and 60-100 dollars per week. His injury consisted of a Colles fracture near the lower end of the right radius and a small chip fracture at the lower end of the right ulna. His wrist was immobolized in the usual surgical splints for eleven weeks, during which period defendants paid him compensation at the maximum rate of twenty dollars per week, two hundred twenty dollars, and, as he then resumed work as a watchman at wages of seventeen and 80-100 dollars per week, defendants paid him compensation of fourteen and 36-100 dollars per week for the succeeding four weeks, fifty-seven and 44-100 dollars, a total of two hundred seventy-seven and 44-100 dollars; and also paid his medical expenses of two hundred fifty dollars.

Thereupon plaintiff resumed work with defendants as a carpenter's helper for four days at fifty-five cents per hour, whereupon he and others were laid off.

For several months thereafter, plaintiff unsuccessfully sought employment as a carpenter. He then secured employment as a boiler-maker's helper at Jahncke Dry Docks, where he worked steadily for three months, at wages of twenty-four dollars per week.

Following thereupon, he did work as a carpenter's helper, first for American Sheet Metal Works, and second for Brown, a contractor, for fifty cents per hour. Since then he had not attempted to get any more carpentry work, as he was unable to keep up with other carpenters.

At the time of the trial, and for seven or eight months prior thereto, plaintiff had been employed by American Sugar Refinery at "straight time" wages of twenty-five and 44-100 dollars per week.

The Court selected Dr. M. J. Magruder as an expert to fix the extent of plaintiff's injuries. His report reads as follows:

"July 29th, 1926.
"Hon. M. M. Boatner,
"Judge, Civil Dist. Court.
"My Dear Sir:
"Examination of Mr. Nelton Roper reveals evidence of an old Colles fracture of right arm, resulting in considerable deformity and impairment of function. Rotation of fore arm is considerably diminished, the wrist is freely flexible, but some stiffness of finger joints, probably resulting from prolonged lack of use.
"X-Ray plate No. 25976 made by Dr. Adolph Henriques April 29th, 1926, shows healed fracture of lower extremity of Radius (Colles fracture) involving wrist joint. Also fracture of styloid process of Ulna; just a small piece of bone chipped off.
"While Mr. Roper has today a fairly useful arm, one that would not be much of a handicap to him in certain occupations or trades, I am of the opinion that he will, as a result of the conditions as above described, never be able to successfully follow his former occupation—that of carpenter.
"As well as I am able to estimate by figures the degree of disability, I would say that there has been an impairment of approximately twenty-five per cent in the usefulness of his arm as a result of the injury.
"Respectfully,
(Signed) "M. J. Magruder, M. D."

Though defendants' able attorney sought by a vigorous cross-examination to make Dr. Magruder modify the above conclusion, he did not succeed.

Counsel then read to the doctor the various occupations of plaintiff from the accident up to the trial and asked if he still thought that Roper could not handle small tools, such as a hatchet and a hammer with sufficient skill to keep up with the ordinary run of carpenters.

The doctor replied, "Well, if you will permit me just to explain my interpretation of what I did mean, I do not believe that Mr. Roper, with the present condition of his arm, can go out and do a full day's carpenter work, such as he did before the injury, and it is doubtful whether a builder would want a carpenter of that kind working for him. I do not know what arrangement they may make, or whether he would be able to continue his employment as a carpenter, working for builders, but a man of his age would find it very difficult to take up a new occupation that would be nearly so remunerative as that of carpenter."

Plaintiff testifies that he could not follow the other carpenter during the four days he was employed as a carpenter's helper by defendants; that he did not know why he was dropped, that he tried in vain to get work as a carpenter without mentioning his hand, that he got only fifty cents per hour as a boiler maker's helper at Jahncke's; that in handling rivets he would hold tongs in his right hand and grab the red hot bolt, but would change to his left hand to fling it every time; that he didn't and couldn't use a hand saw or hammer while working as a carpenter's helper for American Sheet Metal Works and Brown, that at time of trial he was covering pipes at American

Sugar Refinery with asbestos and canvas, which required the use of both hands, as he sewed covering with a needle, and stood on a ladder, and sometimes used a small saw to sever the asbestos and cut it to right length; that he couldn't possibly use a hammer or a saw without bruising the wood on account of the stiffness of his hand and the weakness of his wrist; that he gave up carpenter work after he left Brown because he was unable to stand it, and that he did not know whether carpenter work was scarce or not; that before the accident he had worked thirteen months for the Southern Pacific as a carpenter doing car repairing and fourteen years at the Colonial Sugar Refinery Company in St. James Parish under Erwin, five as a carpenter and nine as a boiler tender.

Brown says Roper had been a good house carpenter, but he was obliged to lay him off because he "couldn't do no nailing and no sawing" and he couldn't pay him only to carry lumber.

Erwin says that plaintiff worked for him five years as a carpenter at three dollars per day and then in 1915 became a boiler tender at three and 50-100 dollars per day, that he was a good carpenter.

Farnsworth, one of the defendants, says plaintiff's work as a carpenter's helper in making concrete forms for four days was satisfactory, that he was using a hammer but not a saw and he was able to do the work for which he was-then employed and was laid off when work was finished.

Hewitt, former machinist foreman, testifies that boiler makers' helpers had to be very alert and active, that he never saw one change hands in throwing hot bolts, as plaintiff says he did and that it would be necessary to use a small saw to cut the asbestos to cover pipes.

Defendants' able attorney argues from above evidence that Roper is just as capable now as he ever was of doing a carpenter's work; that he was doing pipe covering for smaller wages because the work was steady and he was certain of continuous employment, whereas carpenters rarely had more than three or four days' work per week.

Although there is testimony tending to support this contention, we agree with the trial Judge in thinking that the weight of the evidence is in favor of plaintiff.

In fixing plaintiff's earning capacity at the time of the accident, the trial Judge applied correctly the controlling law, paragraph 3 of Section 8 of Act 216 of 1924. His reasons for judgment are as follows:

"The plaintiff is found to be permanently, partially disabled, and entitled to compensation under sub-paragraph (c) of paragraph 1 of section 8 of the Workmen's Compensation Act, as amended by Act 216 of 1924, page 446. At the time of the accident his earnings were at the rate of $39.60 a week; a year afterwards and now his earnings are at the rate of $25.44 a week. Considering that the record shows the plaintiff to be a diligent, industrious man, for this case actual earnings are as good a test as any of ability to earn wages. Impairment is thus fixed at $14.16 a week and compensation at $9.20. For the first 15 weeks following the accident compensation has been paid; the period of the compensation now allowed is fixed at 285 weeks succeeding, with legal interest on accrued installments from the due dates of each."

In these reasons we fully concur.

The judgment is, therefore, affirmed.